■ In the Matter of ROBERT L. PHILLIPS et al., Appellants, v TOWN OF CLIFTON PARK WATER AUTHORITY et al., Respondents. [730 NYS2d 565] —Carpinello, J. Appeal from a judgment of the Supreme Court (Williams, J.), entered January 28, 2000 in Saratoga County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Clifton Park Water Authority assessing source and storage fees for its water system.

A detailed factual analysis of the instant controversy has been set forth by this Court on two prior occasions and thus will not be repeated herein (243 AD2d 911; 215 AD2d 924). Briefly, petitioners, owners of commercial property in the Town of Clifton Park, Saratoga County, challenge the assessment by respondent Town of Clifton Park Water Authority (hereinafter the Water Authority) of $22,000 in "source" and "storage" fees on two newly constructed office buildings. The origin of these fees, which petitioners claim are actually an invalid tax, is the Water Authority's 1992 adoption of a "Water Service Fee Schedule" setting forth charges for the use of its integrated water system. Under this fee schedule, "[a]ll property proposed for subdivision or change in use" was charged, in addition to the standard turn-on, meter inspection and hook-up fees, a one-time "source" and "storage" fee.

Following a nonjury trial, Supreme Court dismissed the petition, adopting in toto the findings of fact and conclusions of law as prepared by respondents' counsel, without specifically addressing petitioners' primary challenge to the assessment, i.e., that the source and storage fees constitute an invalid tax. Upon our review of the record, we are compelled to the conclusion that that portion of the Water Authority's fee structure which imposes source and storage "fees" only on properties proposed for subdivision or change in use, i.e., new construction, indeed imposes an impermissible tax, not a fee, and is therefore unlawful. Accordingly, we reverse Supreme Court's judgment and grant the petition.

It is undisputed that a public authority cannot levy taxes, which "go to the support of government without any necessity to relate them to particular benefits received by the taxpayer" (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 58). It can, however, exact fees, which are characterized as "a visitation of the costs of special services upon the one who derives a benefit from them" (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 162 [empha-

sis in original]; *see,* Public Authorities Law § 1120-d [20]).*
Indeed, "[t]o the extent that fees charged are exacted for revenue purposes or to offset the cost of general governmental functions they are invalid as an unauthorized tax" (*Matter of Torsoe Bros. Constr. Corp. v Board of Trustees,* 49 AD2d 461, 465; *see, New York Tel. Co. v City of Amsterdam,* 200 AD2d 315, 317; *Orange & Rockland Utils. v Town of Clarkstown,* 80 AD2d 846, 847). To be sure, the law does not permit a municipality to charge "newcomers" an impact fee to cover expansion costs of an existing water facility absent a demonstration that such a fee is necessitated by the particular project (as opposed to future growth and development in that municipality generally) or a demonstration that such newcomer would be primarily or proportionately benefitted by the expansion (*see, Albany Area Bldrs. Assn. v Town of Guilderland,* 141 AD2d 293, 298, *affd* 74 NY2d 372; *Home Bldrs. Assn. v County of Onondaga,* 151 Misc 2d 886; *see also, Giuliani v Hevesi,* 228 AD2d 348, *mod* 90 NY2d 27).

Here, the record clearly establishes that the source and storage fees (which are assessed only on projects involving new construction) actually fund improvements to the water system which benefit everyone in the water district. The evidence is also clear that petitioners' specific project did not require any improvements to the system. For example, the administrator of the Water Authority testified that the improvements to the water system impact *all* users of the system. Similarly, when asked on direct examination if "there [is] anyone in the service area of the Water Authority not benefitted by the storage improvements," respondents' own licensed professional engineer, who was involved in developing the challenged fee structure, unequivocally testified, "No." This same engineer further conceded that other capital improvements to the existing system also benefit everyone in the district. Particularly noteworthy are the following exchanges during his cross-examination:

"Q. * * * And you have just told us the improvements you have described, everybody in the water district benefits from them, don't they?

"A. That's true.

---

* Relatedly, even where a fee is properly imposed, the amount thereof must be based on reliable factual studies and statistics and must bear a reasonable correlation to the average, associated cost of the service provided (*see, Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra; Coconato v Town of Esopus,* 152 AD2d 39, 43, *lv denied* 76 NY2d 701; *Orange & Rockland Utils. v Town of Clarkstown,* 80 AD2d 846; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees,* 49 AD2d 461, 465).

"Q. But, in fact, some people pay source and storage fees that contribute to that expense and other people don't, correct? * * *

"Q. Right?

"A. Say it again.

"Q. The improvements you have described in the Clifton Park Water District, everyone benefits from, but some people contribute to the cost of that through source and storage fees and others don't?

"A. To some degree that's true, yes. * * *

"Q. Isn't it true by making the improvement, everybody in the district benefitted?

"A. Yes.

"Q. Isn't it true when you created new wells down at Vischers Ferry, everyone in the district benefitted?

"A. Yes.

"Q. Isn't it true that when you built the storage tank on Knolltop, the pressure was better and essentially everybody in the system benefitted?

"A. No, that's not true.

"Q. A lot of the existing users benefitted from that, right?

"A. That's correct."

The crux of respondents' argument at the trial was that it is not "fair" to charge existing users for capital improvements to meet new demand created by growth generally, a classic "welcome stranger" philosophy. While perhaps a strong equitable concept, the law does not support it. Because the subject fees impose the burden of these capital improvements upon a discrete group of residents, even though the benefit is enjoyed by all, the true nature of the subject source and storage fees is that of a prohibited tax (*see, Coconato v Town of Esopus*, 152 AD2d 39, *lv denied* 76 NY2d 701; *Albany Area Bldrs. Assn. v Town of Guilderland*, 141 AD2d 293, *supra*; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees*, 49 AD2d 461, 465, *supra*; *Home Bldrs. Assn. v County of Onondaga*, 151 Misc 2d 886, *supra*).

In advancing the propriety of the Water Authority's "fee," respondents argue that it is lawful for petitioners to be required to contribute their fair share to *past* costs expended to develop and maintain the intact water system. We find no authority in the law for this position. To the contrary, this Court's prior decisions clearly reject such a theory. In *Albany Area Bldrs. Assn. v Town of Guilderland (supra)*, we held that "[t]o the extent

that the transportation impact fee imposes the expense of highway improvements upon a small group of home buyers even though the benefit of such improvements is enjoyed by the public generally, this fee indeed resembles a tax" (*id.*, at 298). This principle was squarely reaffirmed in *Coconato v Town of Esopus* (*supra*), wherein we similarly rejected an attempt to justify a hook-up fee to the town water system as an entrance fee to be applied only to new users of the system. These cases speak directly to the issue at bar and denounce the imposition of a one-time impact fee even where a municipal newcomer admittedly reaps the benefit of an existing intact infrastructure (*see also, Matter of Torsoe Bros. Constr. Corp. v Board of Trustees, supra; see generally, Video Aid Corp. v Town of Wallkill*, 203 AD2d 554, *mod on other grounds* 85 NY2d 663). Indeed, all new residents in any municipality reap the benefit of the existing municipal infrastructure which, before their arrival in that community, were paid for by those already present. However "unfair" to existing residents, the law simply does not permit charging a fee only to newcomers to equalize the financial burden between them and long-time residents who have paid for an existing infrastructure.

In light of our conclusion that the subject fees are unlawful as an invalid tax, we need not reach petitioners' constitutional challenge.

Cardona, P. J., Crew III, Peters and Spain, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition granted.